ERIC ONYANGO, PETITIONER *v*. COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 27788–11L, 19081–12L.        Filed June 24, 2014.

On several occasions the U.S. Postal Service (Postal Service)
attempted, albeit unsuccessfully, to deliver to P a notice of
deficiency that R had mailed to him by certified mail, return
receipt requested, and addressed to his legal residence. On at
least two occasions the Postal Service left notices of attempted
delivery of the certified mail which contained the notice of
deficiency at the address of P's legal residence. In those
notices, the Postal Service informed P that it had certified
mail to deliver to him and that he had to sign a receipt for

that mail before the Postal Service would deliver it to him. P declined to check on a regular basis his mailbox at his legal residence and to retrieve on a regular basis any Postal Service mail items delivered there. After several unsuccessful attempts to deliver the certified mail in question to P at his legal residence, the Postal Service returned it to R. *Held*: P may not decline to retrieve his Postal Service mail, when he was reasonably able and had multiple opportunities to do so, and thereafter successfully contend that he did not receive for purposes of I.R.C. sec. 6330(c)(2)(B) a notice of deficiency. *Held, further*, we reject P's contention that he is entitled under I.R.C. sec. 6330(c)(2)(B) to dispute the underlying tax liability to which that notice of deficiency pertained.

Eric Onyango, pro se.
*Lauren N. May* and *K. Elizabeth Kelly*, for respondent.

CHIECHI, *Judge*: These cases arise from petitions filed in response to respective notices of determination concerning collection action(s) under section 6320 and/or 6330[1] dated November 3, 2011, and June 25, 2012, with respect to petitioner's taxable years 2006, 2007, 2008, and 2009.

The only issue presented here is whether petitioner is entitled under section 6330(c)(2)(B) to dispute the underlying tax liability for his taxable year 2006.[2] We hold that he is not.

---

[1] All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Court's Rules of Practice and Procedure.

[2] The parties stipulated in pertinent part as follows: "The only aspect of the determinations set forth in the notices of determination [dated November 3, 2011, and June 25, 2012] that petitioner disputes in these cases is petitioner's correct tax liability for tax year 2006." At the beginning of the trial in these cases, petitioner advised the Court that he was unable to testify about matters relating to claimed expenses that he asserted would establish his correct Federal income tax (tax) liability for his taxable year 2006. In the light of petitioner's claimed inability to present any such evidence and the significant delays that had already occurred in the disposition of these cases, the Court decided to conduct a partial trial in order to determine the threshold issue of whether petitioner is entitled to dispute the underlying tax liability for his taxable year 2006. The Court informed the parties at the beginning of that partial trial that if it were to find on the basis of the evidence adduced at that partial trial that petitioner is entitled to dispute the underlying tax liability for his taxable year 2006, a further trial would be required at which petitioner would be able to present evidence to establish what he claims is his correct tax liability for that year. The Court further informed the parties that if it were to find on the basis of the evidence adduced at the partial trial that petitioner is

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At all relevant times, including when he filed the respective petitions in these cases, petitioner's legal residence was 222 North Columbus Drive, No. 1507, Chicago, Illinois 60601 (Columbus Drive apartment).[3]

Petitioner timely filed a tax return for his taxable year 2006. In that return, petitioner reported total tax of $1,606 for that year.

At a time not established by the record, petitioner submitted to respondent an amended tax return for his taxable year 2006 (September 23, 2008 amended 2006 return) that his return preparer had signed and dated September 23, 2008. In that amended return, petitioner reported, inter alia, an increase of $2,168 in his tax liability for his taxable year 2006 or total tax of $3,774 (petitioner's reported increased 2006 tax liability). Respondent filed and processed petitioner's September 23, 2008 amended 2006 return and changed petitioner's tax liability in respondent's records to reflect petitioner's reported increased 2006 tax liability of $3,774.

At a time not established by the record, but after respondent issued to petitioner a notice of deficiency for his taxable years 2006 and 2007 (discussed below), petitioner submitted to respondent a second amended tax return for his taxable year 2006 (June 23, 2011 amended 2006 return) that his return preparer had signed and dated June 23, 2011. In that amended return, petitioner reported, inter alia, an increase of $11,255 in his tax liability for his taxable year 2006 or total tax of $15,029. Respondent did not file and process petitioner's June 23, 2011 amended 2006 tax return, which, as noted above, petitioner filed after respondent issued the notice of deficiency for his taxable years 2006 and 2007.

---

not entitled to dispute the underlying tax liability for his taxable year 2006, no further trial would be required in the light of the parties' stipulation as to what is petitioner's only dispute in these cases.

[3] The address of petitioner's Columbus Drive apartment was his address at the time respondent issued to petitioner the notice of deficiency for his taxable years 2006 and 2007 (discussed below) as well as at the time petitioner filed the petitions and at the time of the partial trial in these cases.

An agent of respondent (examining agent) conducted an examination of petitioner's taxable years 2006 and 2007. Respondent proposed certain adjustments to petitioner's September 23, 2008 amended 2006 return on the basis of that examination. A representative (Appeals officer) of respondent's Appeals Office in Chicago, Illinois, contacted petitioner by letter addressed to his Columbus Drive apartment and scheduled a meeting with him to discuss those proposed adjustments. Petitioner did not appear at that scheduled meeting. Thereafter, in the spring or early summer of 2010, the Appeals officer sent petitioner another letter addressed to his Columbus Drive apartment advising him that if he did not contact the Appeals officer within 20 days, a notice of deficiency would be issued to him for his taxable years 2006 and 2007.

On August 6, 2010, respondent issued to petitioner a notice of deficiency for his taxable years 2006 and 2007 (2006–2007 notice of deficiency) that was addressed and mailed by certified mail, return receipt requested, to petitioner's Columbus Drive apartment. [4] In the 2006–2007 notice of deficiency, respondent determined, inter alia, a deficiency in, and an accuracy-related penalty under section 6662(a) on, petitioner's tax for his taxable year 2006 of $14,987 and $2,997.40, respectively. [5] Petitioner did not timely file a petition with respect to the 2006–2007 notice of deficiency.

On several occasions the U.S. Postal Service (Postal Service) attempted, albeit unsuccessfully, to deliver the 2006–2007 notice of deficiency to petitioner at the address of his Columbus Drive apartment. On at least two occasions the Postal Service left notices of attempted delivery of certified mail at that address. In those notices, the Postal Service informed petitioner that it had certified mail to deliver to him and that he had to sign a receipt for that mail before the Postal Service would deliver it to him.

At a time not established by the record that was not later than late October or early November 2010, [6] petitioner

---

[4] See supra note 3.

[5] The determinations that respondent made in the 2006–2007 notice of deficiency were made with respect to the various amounts that petitioner reported in his September 23, 2008 amended 2006 return.

[6] Petitioner testified that he found the notices from the Postal Service "around late October or early November" 2010 and went to his local Postal

checked his mailbox at his Columbus Drive apartment and found at least two notices of attempted delivery of certified mail from the Postal Service. In those notices, the Postal Service informed petitioner that it had certified mail from a sender, who was not identified on those notices, and that he should retrieve and sign for that certified mail at his local Postal Service office. At the time not established by the record[7] when petitioner went to his local Postal Service office the certified mail to which the notices from the Postal Service pertained had been returned to the sender as unclaimed.

Petitioner spent around 30 to 40% of the period August to December 2010, including sleeping overnight, at his Columbus Drive apartment and the remainder of that period staying with friends. He returned to and stayed at that apartment during each of the months August through October 2010.

At all relevant times, including during the period August to December 2010, petitioner received certain bills online and certain other bills through the Postal Service mail system at his Columbus Drive apartment. Petitioner declined to check on a regular basis his mailbox at that apartment and to retrieve on a regular basis any Postal Service mail items delivered there. He usually disregarded and rarely opened the bills that he received through the Postal Service mail system at his Columbus Drive apartment and did not depend on that mail system as a reminder to pay bills that were sent to him through that system. Instead, the reminder that he often used to pay the utility bills that he received through the Postal Service mail system was the utility companies' disconnection of his utilities for failure to pay utility bills that were due.

On May 24, 2011, respondent issued to petitioner a notice of intent to levy and notice of your right to a hearing (notice of intent to levy) for his taxable years 2006, 2007, and 2008.

Service office after he found those notices. As discussed below, we are unwilling to rely on petitioner's testimony to establish the date around which petitioner checked his mailbox at his Columbus Drive apartment and found the two notices in question from the Postal Service (discussed in the text) and went to his local Postal Service office with those notices.

[7] *See supra* note 6.

On June 6, 2011, respondent received from petitioner Form 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to the notice of intent to levy (Form 12153 concerning proposed levy), in which petitioner requested a hearing with respect to that notice.

The settlement officer in respondent's Appeals Office assigned to petitioner's Form 12153 concerning proposed levy spoke with petitioner by telephone about that matter.

On November 3, 2011, respondent's Appeals Office issued to petitioner a notice of determination concerning collection action(s) under section 6330, in which that office sustained the notice of intent to levy.

On June 7, 2011, respondent issued to petitioner a notice of Federal tax lien filing and your right to a hearing under I.R.C. 6320 (notice of Federal tax lien filing) for his taxable years 2006, 2007, and 2008.

On July 8, 2011, respondent received from petitioner Form 12153 with respect to the notice of Federal tax lien filing (Form 12153 concerning tax lien filing), in which petitioner requested a hearing with respect to that notice.

On June 5, 2012, after petitioner provided certain documentation to the settlement officer in respondent's Appeals Office assigned to petitioner's Form 12153 concerning tax lien filing, that settlement officer spoke by telephone with petitioner about that matter.

On June 25, 2012, respondent's Appeals Office issued to petitioner a notice of determination concerning collection action(s) under section 6320 and/or 6330, in which that office sustained the tax lien filing.

## OPINION

The only issue presented here is whether petitioner is entitled under section 6330(c)(2)(B) to dispute the underlying tax liability for his taxable year 2006.[8] A person may dispute the existence or the amount of the underlying tax liability for any tax period if the person did not receive a notice of deficiency for that tax liability or did not otherwise have the opportunity to dispute that tax liability. *Id.*

It is petitioner's position that he is entitled under section 6330(c)(2)(B) to contest the underlying tax liability for his

[8] *See supra* note 2.

taxable year 2006. In support of that position, petitioner contends that although respondent mailed to him by certified mail, return receipt requested, the 2006–2007 notice of deficiency that was addressed to his Columbus Drive apartment,[9] he did not receive that notice within the 90-day period during which he could have filed a petition with the Court with respect to that notice. In support of that contention, petitioner relies on his testimony at the partial trial in these cases.

Respondent counters that although the Postal Service returned to respondent the 2006–2007 notice after several unsuccessful attempts to deliver it to petitioner at the address of his Columbus Drive apartment, petitioner "chose not to accept delivery." According to respondent, petitioner's testimony to the contrary is not credible and "should be given no weight."

We agree with respondent that petitioner's testimony is not credible in certain material respects and thus is unreliable. However, even if we accept petitioner's testimony that he did not know until late October or early November 2010 about the notices from the Postal Service of attempted delivery of certified mail (i.e., the 2006–2007 notice of deficiency) and that when he went to his local Postal Service office with those notices the Postal Service had already returned the certified mail to the sender, we nonetheless reject his contention that he is entitled under section 6330(c)(2)(B) to dispute the underlying tax liability for his taxable year 2006. That is because petitioner's testimony establishes that, even though he spent at his Columbus Drive apartment around 30 to 40% of the period August to December 2010, including staying and sleeping overnight there during each of the months August through October 2010, he declined to check on a regular basis his mailbox at that apartment and to retrieve on a regular basis any Postal Service mail items delivered there. And petitioner did so despite the fact that on August 6, 2010, when respondent mailed to him the 2006–2007 notice of deficiency that was addressed to his Columbus Drive apartment, he knew that (1) respondent's Appeals Office in Chicago was considering the adjustments that respondent's examining agent had pro-

_____

[9] *See supra* note 3.

posed with respect to his taxable years 2006 and 2007; (2) an Appeals officer in that office had contacted him by letter and scheduled a meeting with him to discuss those proposed adjustments; (3) he did not appear at that meeting; and (4) thereafter, in the spring or early summer of 2010, that Appeals officer sent him another letter advising him that if he did not contact the Appeals officer within 20 days, a notice of deficiency would be issued to him for his taxable years 2006 and 2007.

On the record before us, we hold that petitioner may not decline to retrieve his Postal Service mail, when he was reasonably able and had multiple opportunities to do so, and thereafter successfully contend that he did not receive for purposes of section 6330(c)(2)(B) the 2006–2007 notice of deficiency. On that record, we reject petitioner's contention that he is entitled under that section to dispute the underlying tax liability for his taxable year 2006.

To reflect the foregoing,[10]

*Decisions will be entered for respondent.*

---

[10]*See supra* note 2.